Neal Weingart, OSB No. 066551
820 SW 2nd Ave., Suite 200
Portland, OR 97204
(503) 379-9933 Telephone
1(888) 957-8392 Facsimile
neal@nealweingartlaw.com

Chloe Thompson, OSB No. 225091
David Rosen, OSB No. 101952
High Desert Law, LLC
716 NW Harriman St.
Bend, OR 97703
chloe@high-desert-law.com
(541) 480-4239 Telephone
(541) 228-9184 Facsimile

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| SOPHIA MCALLISTER, personal representative for the Estate of PATRICK MICHAEL MCALLISTER, deceased,<br><br>Plaintiff,<br><br>vs.<br><br>LANE COUNTY, an Oregon County, CLIFTON G. HARROLD, an individual, CARL E. WILKERSON, III, an individual, GREG RICE, an individual, RANDALL BROOME, an individual, JOHN and JANE DOES 1-15, individuals,<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br>Wrongful Death; Negligence; Violation of Civil Rights (42 U.S.C. §1983); 42 USC 12101 *et seq*, ORS 659A.103 *et seq*<br><br>JURY TRIAL DEMANDED |

FOR PLAINTIFF'S CLAIM FOR RELIEF HEREIN, Plaintiff alleges as follows:

## **INTRODUCTION**

1.

Page  1 – COMPLAINT

On March 10, 2025, Patrick Michael McAllister (then age 33) was booked into the Lane County Jail after turning himself into custody to serve a sentence. He was scheduled to be released on March 27, 2025. Mr. McAllister had a history of severe mental illness including suicidal ideation. The jail's staff and medical providers had ample documentation of Mr. McAllister's prior mental illness including instances of suicidal ideation and suicide attempts. On the evening of March 13, 2025, Mr. McAllister was found hanging in his cell. He was transported to Sacred Heart Medical Center and died on March 23, 2025, at 1:28 p.m.

**JURISDICTION AND VENUE**

2.

Venue is proper within the United States District Court for the District of Oregon, Eugene Division, because all of the events giving rise to this claim occurred in in the state of Oregon, and all Defendants reside, operate or work in the state of Oregon.  Specifically, all of the acts and practices alleged herein occurred at the Lane County Jail in Eugene, Oregon.

3.

This action arises under the constitution and laws of the United States and the state of Oregon. This Court has jurisdiction over this matter.

**PARTIES**

4.

Plaintiff Sophia McAllister is the duly appointed personal representative of the Estate of Patrick Michael McAllister, deceased. Patrick McAllister was born in Ukiah, California on August 15, 1991. At the time of his death, he was a resident of Lane County, Oregon. He is survived by his parents, John and Janice McAllister. John and Janice McAllister are adults currently residing in Eugene, Lane County, state of Oregon .

5.

At all times relevant herein, Patrick McAllister was a detainee in the Lane County Jail.

Page  2 – COMPLAINT

6.

Defendant Lane County ("Lane County" or "the County") is a county in the state of Oregon. At all times material to this Complaint, the Lane County Jail was a division of Lane County and was obligated to provide services which promote and protect the health of adults and juveniles entrusted to its care. This includes providing medically acceptable treatment and accommodation for inmates with diseases and conditions. Defendant Lane County is a "public body" within the meaning of Oregon Revised Statutes chapter 30. Lane County Sheriff's Office ("MCSO") is a corporate entity and "arm" of the county acting under color of state law. Lane County Jail ("Jail") is a corporate entity and "arm" of the county acting under color of state law.

7.

Clifton G. Harrold ("Harrold") was the duly elected Sheriff of Lane County. At all times pertinent, Mr. Wilkerson was employed by Lane County as Sheriff and had a role as a supervisory officer in the Lane County Sheriff's Department. Mr. Wilkerson is an agent of Lane County, actual or implied, acting within the course and scope of his agency. Upon information and belief, he is a citizen and resident of the state of Oregon.

8.

Carl E. Wilkerson, III ("Wilkerson") is the duly elected Sheriff of Lane County. At all times pertinent, Mr. Wilkerson was employed by Lane County as Sheriff and had a role as a supervisory officer in the Lane County Sheriff's Department. Mr. Wilkerson is an agent of Lane County, actual or implied, acting within the course and scope of his agency. Upon information and belief, he is a citizen and resident of the state of Oregon.

9.

Captain Greg Rice ("Rice") is the Commander of the Lane County Jail. At all times pertinent, Mr. Rice was employed by Lane County as a Commander of the Lane County Jail and had a role as a supervisory officer in the Lane County Sheriff's Department. Mr. Rice is an agent

Page 3 – COMPLAINT

of Lane County, actual or implied, acting within the course and scope of his agency. Upon information and belief, he is a citizen and resident of the state of Oregon.

10.

Randall Broome is a Lane County Sheriff's Deputy.  At all times pertinent, Deputy Broome was employed by Lane County as a corrections deputy at the Lane County jail.  Deputy Broome is an agent of Lane County, actual or implied, acting within the course and scope of his agency. Upon information and belief, he is a citizen and resident of the state of Oregon.

11.

John Doe 1 is a registered nurse licensed in the state of Oregon. At all times pertinent, John Doe 1 was employed by Lane County as a corrections nurse. John Doe 1 is an agent of Lane County, actual or implied, acting within the course and scope of his agency. Upon information and belief, he is a citizen and resident of the state of Oregon.

12.

John Doe 2 ("Doe 2") is a doctor or medical practitioner licensed in the state of Oregon. At all times pertinent, John Doe 2 was employed by Lane County as the Lane County Health Program Director. John Doe 2 is an agent of Lane County, actual or implied, acting within the course and scope of his/her agency. Upon information and belief, s/he is a citizen and resident of the state of Oregon.

13.

Defendants JOHN and JANE DOES 3 - 15 are subcontractors, employees, and/or agents of Lane County, Lane County Jail, and/or Lane County Sheriff's Office. These Defendants are persons who knew or should have known that Mr. McAllister was (1) in the need of medical care; (2) suicidal; (3) experiencing a mental health crisis; and/or (3) was housed in unconstitutional conditions of confinement. In spite of this knowledge, these Defendants took no steps to prevent serious injury and/or death to Mr. McAllister. Each of these Doe Defendants was negligent; deliberately indifferent; acted in furtherance of an official and/or *de facto* policy

Page  4 – COMPLAINT

or procedure of deliberate indifference; and/or were responsible for the promulgation of the policies and procedures and permitted the customs/practices pursuant to which the acts alleged herein were committed. Each of these individuals was employed in a supervisory capacity at the Lane County Jail. The identities of these Doe Defendants are unknown at this time and will be named as discovery progresses. Once the identity of any or all Doe Defendants has been determined, this Complaint will be amended to name them.

14.

At all material times herein, all Defendants acted under color of law.

15.

At all material times herein, all individuals acted within the course and scope of employment, and in furtherance thereto.

16.

All individual Defendants are sued in their individual capacities as relates to claims under of law pursuant to 42 USC 1983. All individual Defendants are sued in their official capacities as relates to claims under course and scope of their employment pursuant to laws of the state of Oregon .

**TORT CLAIM NOTICE**

17.

On or around April 1, 2025, tort claim notice was properly given to the Lane County Defendants pursuant to the Oregon Tort Claims Act, ORS 30.275.

**FACTUAL ALLEGATIONS**

18.

Lane County Jail houses pretrial detainees and persons convicted of crimes. Lane County is obligated by state and federal law to provide medical and mental health care for persons lodged in the Lane County Jail. Lane County's duty to provide medical and mental health care is a nondelegable duty.

Page 5 – COMPLAINT

19.

Oregon Administrative Rules ("OAR") 291-076-0010(3) expresses the legislature's policy that Oregon's Department of Corrections must "to provide immediate assistance whenever an adult in custody demonstrates or is reported to be at risk of self-directed violence."

20.

OAR 291-076-0020(3) provides that inmates at risk must be given a "suicide assessment," which is defined as "a brief but formal assessment of mental status conducted by a mental health provider or registered nurse in consultation with the mental health provider, concluding with a judged level of suicidal risk."

21.

OAR 291-076-0020(5) provides that an inmate judged to be at "moderate risk" of suicide must be placed on "suicide close observation," which requires that "unobstructed visual observation of the inmate is required at staggered intervals, not to exceed 15 minutes, with recorded observation within each 15-minute interval."

22.

OAR 291-076-0020 (7) requires that an inmate judged to be at "high risk" of suicide must be placed on "suicide watch," which requires that "unobstructed one-to-one view of the inmate is required at all times with recorded observation within each 15-minute interval."

23.

Lane County Jail certifies that the level of service it provides complies with the Northwest Accreditation Alliance's criteria. Lane County Jail also complies with the requirements of the Oregon State Sheriff's Association's Oregon Jail Standards, which it voluntarily adopted in 2000.

24.

Oregon Jail Standard B-107 requires all jails to have policies and procedures relating to the intake of inmates in need of immediate attention for a serious medical need or mental health

Page 6 – COMPLAINT

need. It requires that such persons be examined by a physician, nurse practitioner or physician's assistant and defines a medical need as serious "if it has been diagnosed as such by a physician or if it were so obvious that a layman would recognize the need for medical care as a serious need." Standard B-208 requires medical intake screening, including obtaining "mental health history diagnosis, and treatment" information and "suicidal thoughts, attempts or feelings." Standard B-209 requires a jail to maintain policies and procedures regarding suicide risk screening. This requires jails to screen for previous suicide attempts, current state of mind and suicidal ideations, information from arrest or transport authorities related to observed or noted risk factors, a family history of suicide or suicide attempts, and scars or other physical manifestations of previous suicide attempts. B-209(c) notes that "if an arrestee has previous been lodged in a jail, staff should determine whether the arrestee previously was at risk to commit suicide or engage in other self-destructive behavior or attempts, if that information is readily available," and B-209(d) requires the jail to "take appropriate steps to manage the risk" if "information is discovered or if an arrestee discloses information that indicates that they are a suicide risk."

25.

Pursuant to these standards Lane County Jail has promulgated policy 2.05 regarding the initial assessment and welfare screening of inmates. Policy 2.05 requires deputies and health services providers to screen inmates for a "mental health history, diagnosis, treatment or suicidal thoughts, attempts or feelings."

26.

Policy 2.05 also requires deputies to complete a screening assessment about suicidality. Deputies must notify mental health or medical staff about any concerns of arrestees being suicidal or engaging in self-destructive behavior. Those arrestees who are determined to be at risk of self-harm "shall be placed on a suicide precaution form and the mental health provider shall be notified"

Page  7 – COMPLAINT

of that risk.    The purpose of such identification is "to provide appropriate treatment and intervention to maintain the arrestee's or AIC's (adult in custody's) stability while in custody.

27.

Policy 2.05 also requires that all newly hired deputies shall receive training on the identification signs and symptoms of mental and emotional disturbance and the recognition of suicide risk.

28.

The Lane County Jail has also promulgated policy B.01.02.08 which states that all arrestees, "shall receive medical screening by the Corrections Division contract Health Services Provider as a part of the booking process."  "The Book In deputy, during the initial processing of the arrestee will inquire if the arrestee: *** [h]as mental health history, diagnosis, treatment or suicidal thoughts, attempts, or feelings.

29.

The Lane County Jail's policy requires a review of the arrestee's history at the jail, inquiring of the arrestee themselves is insufficient to comply with this policy.

30.

The Lane County Jail has also promulgated policy B.01.02.09, which states:

Initial suicidal ideation screening will be done during the booking process to determine the possible risk of attempted suicide. All employees are charged with the responsibility to establish as a high priority the identification of potential life threatening behaviors amongst arrestees and AICs, and are directed to conduct themselves in a manner leading to the prevention of injury or death.*** Identification of suicidal AICs: 1. At the time of booking, all arrestees and AICs will be initially screened by a Booking deputy as well as by the Jail's contract Health Services Provider concerning:

a. Previous suicide attempts,

b. The arrestee's current state of mind and possible suicide

Page  8 – COMPLAINT

intentions,

c. Information from arresting/transporting officers related to any

observed or noted suicide risk factors,

d. Family history of suicide or suicide attempts,

e. Scars or other physical evidence of previous suicide attempts,

f. Prior lodgings with risk behavior or attempts. If readily available.  ***

B. Those AICs determined to be at risk of self-harm shall be placed on a Suicide Precaution

Form and the Jail's Mental Health provider shall be notified either verbally or electronically –

depending on the imminent risk.

31.

At all material times herein, it was widely known throughout the correctional field and

extensively documented that suicides in jail occur at a rate several times greater than the general

public. For instance, a recent study from the U.S. Department of Justice Bureau of Justice

Statistics found that suicide has been the leading cause of death in jails every year since 2000.[1]

Oregon Public Broadcasting reported in 2019 that the suicide rate in Oregon exceeded the

national average, with suicide by hanging constituting the leading single cause of death in

Oregon and Washington jails.[2] A 2010 study published by the U.S. Department of Justice

National Institute of Corrections reported that 47% of jail suicides were detainees who had a

---

[1] U.S. Dep't of Justice, *Mortality in Local Jails, 2000-2019 – Statistical Tables*, BUREAU OF JUSTICE STATISTICS, Dec. 2021 (available at: https://bjs.ojp.gov/content/pub/pdf/mlj0019st.pdf); *see also* U.S. Dep't of Justice, *Mortality in Local Jails and State Prisons, 2000-2013 – Statistical Tables*, BUREAU OF JUSTICE STATISTICS, Aug. 2015 (available at: https://bjs.ojp.gov/content/pub/pdf/mljsp0013st.pdf).

[2] Conrad Wilson, Tony Schick, Austin Jenkins & Sydney Brownstone, *Booked and Buried: Northwest Jails' Mounting Death Toll, OPB*, Apr. 2, 2019 (available at: https://www.opb.org/news/article/jail-deaths-oregon-washington-data-tracking/); Conrad Wilson, *Suicide Is the Leading Cause of Death in Oregon and Washington Jails*, OPB, Apr. 4, 2019 (available at: https://www.opb.org/news/article/suicide-oregon-washington-jails-death-investigation/); *see also* Ryan Haas, *'Booked and Buried': The Scope and Scale of Northwest Jail Deaths Revealed*, OPB, Dec. 27, 2019 (available at: https://www.opb.org/news/article/washington-oregon-county-jails-deaths-documentary-booked-and-buried/).

Page  9 – COMPLAINT

history of substance abuse, 38% of jail suicides were detainees who had a history of mental illness, and 70% of jail suicides occurred within four months of confinement.[3] A 2021 study published by Disability Rights Oregon found that "[O]ver than half of the ten people who died in Oregon jails between January 1, 2020 and October 31, 2020 had mental illness or substance abuse disorder."[4] A 2003 study published by the Human Rights Watch reports, "[y]oung men, persons with mental illness, alcohol and drug addicts, and people who are in custody, are amongst the most at-risk groups for suicide."[5]

## Mr. McAllister's Mental and Medical Health History

32.

Mr. McAllister was a disabled individual.  He had been diagnosed with schizoaffective disorder. He was open and clear about his mental health issues with others, and they significantly affected his ability to perform the daily activities of life. His mental health issues led to inability to hold down stable employment, frequent suicidal ideation, difficulty in interpersonal relationships and other issues.

## Mr. McAllister's Booking and Suicide

On March 10, 2025, when Patrick McAllister appeared at the Lane County jail, Deputy Broome conducted Mr. McAllister's booking intake. Deputy Broome had access to Mr. McAllister's prior booking information, including his history of suicidality while incarcerated at the Lane County jail.  Despite access to this information, Deputy Broome noted that there were no

---

[3] Lindsey Hayes, *National Study of Jail Suicide 20 Years Later*, NATIONAL CENTER ON INSTITUTIONS AND ALTERNATIVES, Apr. 2010, at xi (available at: http://www.ncianet.org/wp-content/uploads/2015/06/national-study-of-jail-suicide-20-years-later.pdf).

[4] Disability Rights Oregon, *Grave Consequences: How the Criminalization of Disability Leads to Deaths in Jail*, DISABILITY RIGHTS OREGON, Winter 2021, at 11 (available at: https://static1.squarespace.com/static/5d645da3cf8e4c000158e55a/t/602059b3851bc700d7627bd7/1612732852443/DRO-Report-Grave+Consequences-2021-02-08.pdf).

[5] Human Rights Watch, *Ill-Equipped: U.S. Prisons and Offenders with Mental Illness*, Oct. 2003, at 186 (available at: https://www.hrw.org/reports/2003/usa1003/usa1003.pdf).

prior suicide attempts documented at the Lane County jail or in the possession of the Lane County Sheriff's Department.

33.

Deputy Broom had access, at this time, to the Lane County Sheriff's Office, Corrections Division, Suicide Precaution Form, for Mr. McAllister's prior booking which noted that on December 20, 2024, Mr. McAllister "made several statements during the booking process. He mentioned he wanted deputies to use force and kill him."

34.

Deputy Broom had access, at this time, to another Lane County Sheriff's Office, Corrections Division, Suicide Precaution Form, which noted that in that same prior custodial span, this time on December 21, 2024, Mr. McAllister made suicidal statements, banged his head against a door, and attempted to wrap his suicide "safety smock" around his own neck "tightly." A safety smock is a clothing article made specifically for inmates at risk of attempting suicide, which prevents use as a ligature.

35.

Deputy Broome also noted Mr. McAllister banging his head against the walls of the booking area, "Booking 2." Deputy Broome noted a behavioral write up, meaning a disciplinary notation, because "MCALLISTER WAS HITTING HIS HEAD ON THE WALL. HE WAS NOT HITTING IT HARD ENOUGH TO INJURE HIMSELF BUT HE HAD A RED MARK ON HIS FOREHEAD AFTER PROLONGED ACTION. LATER MCALLISTER BEGAN KICKING THE WINDOW. I SPOKE TO MCALLISTER AND WAS ABLE TO GET HIM TO CEASE HIS BEHAVIOR. WHEN HOUSING MCALLISTER I SPOKE TO HIM ABOUT HIS WEAK ATTEMPTS OF HARMING HIMSELF. MCALLISTER STATED HE HAD NO INTENTION OF HARMING HIMSELF AND WAS NOT FEELING SUICIDAL."

36.

Page 11 – COMPLAINT

Despite his attempts at self-harm, Deputy Broome refused to review Mr. McAllister's prior jail records indicating his previous suicide attempt at the Lane County jail.  In addition, Deputy Broome made no effort to refer Mr. McAllister to mental health intake or evaluation, and he did not place Mr. McAllister on a suicide watch.

37.

On the evening of March 13, 2025, Mr. McAllister was found hanging in his cell. He was transported to Sacred Heart Medical Center and died on March 23, 2025, at 1:28 p.m.

**DAMAGES**

38.

Mr. McAllister was 33 years old at the time of his death. He left behind two sisters, including the Plaintiff and her sister, Jennifer, as well as his own parents.

39.

The aforesaid acts and omissions of Defendants deprived Mr. McAllister of his right to be free from cruel and punishment and to due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution; directly caused and/or directly contributed to his pain, suffering, and a general decline of his quality of life; directly caused and/or directly contributed to cause his death; directly caused and/or directly contributed to cause the Plaintiff and Mr. McAllister's surviving family members to suffer loss of services, companionship, comfort, instruction, guidance, counsel, training, and support; and directly caused and/or directly contributed to cause pecuniary losses, including but not limited to medical and funeral expenses.

40.

Prior to death, Mr. McAllister suffered extreme physical and mental pain, terror, despondency, anxiety, suffering, and emotional distress.

41.

Page  12 – COMPLAINT

Mr. McAllister's death was unnecessary and could have been prevented via provision of basic medical care and treatment.

42.

As a result and consequence of Defendants' acts and omissions, Plaintiff has incurred or will incur in the future economic damages. Specifically, Plaintiff has incurred medical expenses, funeral and burial expenses, and other expenses in an amount to be proven at trial.

43.

As a further result and consequence of Defendants' acts and omissions, Plaintiff is entitled to recover for the decedent's disability, physical pain, anguish, misery, torment, distress, confusion, and lack of enjoyment of life, all to the non-economic damage in an amount to be proven at trial and determined by a jury.

## FIRST CLAIM FOR RELIEF

### Negligence – Wrongful Death

### Against All Defendants

44.

Plaintiff realleges and incorporates herein as though set forth in full paragraphs 1 through 41, above.

45.

Defendants had a duty to care for detainees and provide reasonable safety and medical care, including psychiatric care.

46.

This duty extends to foreseeable self-inflicted harms and includes protecting detainees against suicide.

47.

This duty exists because detainees, by virtue of their detention, are unable to obtain medical and psychiatric care for themselves.

Page 13 – COMPLAINT

48.

Defendants breached this duty and were negligent when they failed to have and follow proper training, policies, and procedures on the assessment of persons with apparent medical and psychiatric needs.

49.

Defendants breached that duty and were negligent when they failed to adequately treat Mr. McAllister's medical and psychiatric needs. Indeed, because Mr. McAllister's medical and psychiatric needs were entirely ignored, Defendants were grossly negligent.

50.

Defendants breached that duty and were negligent when they failed to have and follow proper training, policies, and procedures on the provision of reasonable and necessary medical and psychiatric care and treatment to detainees.

51.

Defendants breached that duty and were negligent when they failed to ensure adequate and proper medical or mental health staffing at the Jail.

52.

Defendants breached that duty and were negligent when they failed to ensure that Mr. McAllister was properly supervised and/or that cell checks were conducted in a safe, timely, and consistent manner.

53.

Defendants breached that duty and were negligent when they failed to ensure that Mr. McAllister received adequate medication.

54.

Defendants breached that duty and were negligent, when they ignored notification of Mr. McAllister's serious mental health conditions and/or suicidality.

55.

Defendants breached that duty and were negligent when they failed to properly assess and treat Mr. McAllister prior to his death.

56.

Defendants breached that duty and were negligent when they failed to maintain a proper suicide prevention program.

57.

As a result of the breaches, failures, and negligence of Defendants, as described above and in other respects as well, Mr. McAllister's mental health deteriorated and he died by means of suicide.

58.

As a result of these breaches, failures and negligence, Mr. McAllister was caused pre-death pain, suffering, despondency, and terror.

59.

As a result of the actions and inactions of Defendants, and each of them, Mr. McAllister endured and suffered severe physical and emotional distress, his medical condition was exacerbated, and he died by means of suicide. The Plaintiff has been denied his love, society and companionship. As a result of the actions and inactions of Defendants, Mr. McAllister's parents and siblings have suffered the loss of familial association with Mr. McAllister. They suffered and will continue to suffer extreme grief and harm due to mental and emotional distress as a result of Mr. McAllister's wrongful death. The Estate of Patrick McAllister has incurred medical expenses and funeral expenses and suffered economic damages as alleged in paragraph 42. Plaintiff is further entitled to non-economic damages as alleged in paragraph 43.

60.

Notice, pursuant to the Oregon Tort Claims Act, was given to Defendant Lane County within the time prescribed by law.

Page  15 – COMPLAINT

**SECOND CLAIM FOR RELIEF**

**Civil Rights Claim – 42 USC 1983 – 8th Amendment**

**Against all individual Defendants**

61.

Plaintiff realleges and incorporates herein as though set forth in full paragraphs 1 through 58, above.

62.

The acts and failure to act described above were done under color of law and are in violation of 42 USC 1983, depriving Mr. McAllister of his civil rights.

63.

At the time Mr. McAllister was incarcerated by the County, it was clearly established in law that the Eighth Amendment imposes a duty on jail officials to provide humane conditions of confinement, including adequate medical and mental health care, and to take reasonable measures to guarantee the safety of the inmates.

64.

Being subjected to unnecessary physical and mental pain and suffering is not part of the penalty that criminal offenders pay for their offenses.  As a result, jail officials and Counties are liable if they know that an inmate or inmates face a substantial risk of serious harm and callously disregard that risk by failing to take reasonable measures to abate it.

65.

Here, Defendants knew that Mr. McAllister faced a substantial risk of suicide, yet callously disregarded that risk by failing to take reasonable measure to abate it.

66.

Here, Defendants knew that Mr. McAllister suffered from physical and mental illness, yet callously disregarded these afflictions by failing to take reasonable measure to abate them.

67.

Page 16 – COMPLAINT

Defendants were deliberately indifferent to Mr. McAllister's rights under the Eighth Amendment of the U.S. Constitution in one or more of the following ways:

a. In failing to ensure that Mr. McAllister was seen by a qualified medical or mental health professional;

b. In failing to adequately review Mr. McAllister's medical history;

c. In failing to adequately review Mr. McAllister's prior booking history;

d. In ignoring Mr. McAllister's open and obvious self-harm;

e. In ignoring Mr. McAllister's prior suicidal ideation and suicide attempts at the Lane County Jail;  and

f. In failing to properly treat Mr. McAllister's serious medical and mental health needs.

68.

As a direct result of the actions and inactions of Defendants as set forth in paragraphs 61 through 67, above, Patrick McAllister endured and suffered severe physical and emotional distress, his medical condition was exacerbated, and he died of suicide. Mr. McAllister's family has been denied his love, society and companionship. The Estate of Patrick McAllister incurred medical expenses and funeral expenses and suffered economic damages as alleged in paragraph 42. Plaintiff is further entitled to non-economic damages as alleged in paragraph 43.

69.

Plaintiff is entitled to necessary and reasonable attorney fees and costs incurred in the prosecution of this action pursuant to 42 USC 1988.

## THIRD CLAIM FOR RELIEF

**Supervisory Liability**

**Against Carl Wilkerson, III, Greg Rice and John Does 1-15**

70.

Page  17 – COMPLAINT

Plaintiff realleges and incorporates herein as though set forth in full paragraphs 1 through 67, above.

71.

The Defendants were supervisors at the Lane County jail, acting under color of state law..

72.

The defendants knew that the actions of Deputy Broome indicated a deliberate indifference to the Eighth Amendment rights of inmates with mental health diagnoses generally and Mr. McAllister, specifically.

73.

The defendants reasonably should have know that Deputy Broome's conduct would deprive other inmates with mental health diagnoses generally and Mr. McAllister specifically of their Eighth Amendment rights.

74.

The defendants failed to act to prevent Deputy Broome from engaging in his deliberate indifference towards inmates with mental health diagnoses generally and Mr. McAllister specifically.

75.

The defendants' failure to prevent Deputy Broome's deliberate indifference towards inmates with mental health needs was so closely related to the deprivation of Mr. McAllister's rights as to be the moving force that caused his death by suicide.

## FOURTH CLAIM FOR RELIEF

### Civil Rights Claim – 42 USC 1983 – *Monell* Claims

### Against Lane County

76.

Page  18 – COMPLAINT

Plaintiff realleges and incorporates herein as though set forth in full paragraphs 1 through 72, above.

77.

At all material times, Defendants were aware of the substantial risk of suicide committed by jail inmates, as evidenced by the jail's policy B.01.02.09 pertaining to AIC Suicide Risk Screening.

78.

The moving forces that resulted in the deprivation of the Eighth Amendment rights of Mr. McAllister were the following policies, customs or practices of Lane County:

a.  A policy, custom or practice of failing to adequately screen mental health at intake;

b.  A policy, custom or practice of failing to adequately review AIC medical history;

c.  A policy, custom or practice of failing to adequately examine AIC mental health after intake;

d.  A policy, custom or practice of failing to have people with serious mental health needs seen by a qualified mental health professional;

e.  A policy, custom or practice of failing to provide sufficient mental health coverage;

f.  A policy, custom or practice of failing to provide a sufficient suicide prevention program;

g.  A policy, custom or practice of failing to meet widely accepted community standards of care with regard to medical and mental health services for jail inmates;

h.  A custom, policy or practice of employing individuals who have a prior history showing indifference to inmates with mental health disorders in the capacity of booking deputy, despite the importance of sensitivity to mental health disorders in that very position; and

i.  A custom, policy or practice of ratification of indifference to mental health needs by employees who have previously displayed indifference to mental health needs, by placing those employees in positions such as the role of booking deputy.

79.

The policies of Defendant Lane County posed a substantial risk of causing substantial harm to Lane County inmates, and Lane County was aware of the risk.

80.

As a direct result of the policies, customs or practices of Lane County, Mr. McAllister endured and suffered severe physical and emotional distress, his medical condition was exacerbated, and he died of suicide. Mr. McAllister's family has been denied his love, society and companionship. The Estate of Patrick McAllister incurred medical expenses and funeral expenses and suffered economic damages as alleged in paragraph 42. Plaintiff is further entitled to non-economic damages as alleged in paragraph 43.

81.

The actions of Defendant Lane County were recklessly indifferent to the civil rights of Patrick McAllister, and callously disregarded Patrick McAllister's physical safety.

82.

Plaintiff is entitled to necessary and reasonable attorney fees and costs incurred in the prosecution of this action pursuant to 42 USC 1988.

**FIFTH CLAIM FOR RELIEF**

**Americans With Disabilities Act ("ADA") and ORS 659A.103 *et seq***

83.

Plaintiff realleges and incorporates herein as though set forth in full paragraphs 1 through 75, above.

84.

Page  20 – COMPLAINT

Lane County is a public entity within the meaning of Title II of the ADA, and provides programs, services or activities to the general public.

85.

At all times relevant, Mr. McAllister was a qualified individual within the meaning of Title II of the ADA and met the essential eligibility requirements for the receipt of services, programs, or activities of the Lane County Jail. Specifically, Mr. McAllister suffered from mental health conditions including schizoaffective disorder that "substantially limits one or more major life activities," including but not limited to the general activities such as "sleeping… concentrating, thinking, communicating, and working." 42 USC 12102.

86.

Lane County provides housing, medical and mental health treatment, and work and educational programs to inmates, which comprise programs and services for Title II purposes.

87.

Under the ADA, Lane County is required to accommodate disabled inmates, including providing inmates with necessary medications, providing the same level of medical care to disabled prisoners, and allowing prisoners to participate in the same programs and services as those inmates who are not disabled.

88.

ORS 659A.103 *et seq* is the Oregon state equivalent to the ADA and is substantially similar or the same.

89.

Lane County was deliberately indifferent in failing to provide Mr. McAllister with reasonable accommodations and other services related to his disabilities, and denied him the rights and benefits accorded to other inmates, solely by reason of his disabilities in violation of the ADA and in the following ways:

Page 21 – COMPLAINT

a.      Lane County failed to provide Mr. McAllister with a mental health evaluation or mental health treatment, despite having information related to Mr. McAllister's mental health disability;

b.      The ADA requires that mentally disabled inmates have access to adequate medical and mental health care. Mr. McAllister was denied adequate mental health care. Specifically, Lane County jail staff failed to evaluate or treat Mr. McAllister's mental health needs, resulting in his suicide; and

c.      The Lane County jail staff failed to enforce appropriate policies and procedures to ensure the provision of necessary accommodations, modifications and/or programs and services to inmates with disabilities.

90.

As a direct result of Defendant's above wrongful acts, Defendants discriminated against Mr. McAllister on the basis of his disability in violation of the ADA, causing him to commit suicide.

91.

Accordingly, Plaintiff is entitled to non-economic damages in an amount to be determined at trial against Defendants for the violations of 42 USC 12101 *et seq.,* ORS 659A.103 *et seq*, and for Plaintiff's attorney fees and costs pursuant to ORS659A.885(d), 29 USC 794a(b), 42 USC 12205, and 42 USC 1988.

**PRAYER**

WHEREFORE, Plaintiff prays for Judgment in his favor and against Defendants as follows:

a)      For economic damages in an amount which a jury determines to be reasonable and to be proven at trial;

b)      For non-economic damages in an amount which a jury determines to be reasonable and to be proven at trial;

Page  22 – COMPLAINT

c)    For attorney fees and costs pursuant to 42 USC 1988, as alleged in Plaintiff's three

Claims for Relief (Civil Rights Violation – 42 USC 1983) (ADA Violation – 42

USC 120101 and ORS 659A.885(d));

d)    For Plaintiff's costs and disbursements incurred herein; and,

e)    Any further relief the Court deems just and equitable.

DATED this 16th day of June, 2026.

*Neal Weingart*

Neal Weingart – Attorney at Law, LLC
820 SW 2nd Ave. Suite 200
Portland, OR 97204
Phone: 503-379-9933
neal@nealweingartlaw.com
Attorney for Plaintiff

Chloe Thompson, OSB No. 225091
David Rosen, OSB No. 101952
High Desert Law, LLC
716 NW Harriman St.
Bend, OR 97703
chloe@high-desert-law.com
(541) 480-4239 Telephone
(541) 228-9184 Facsimile
Attorneys for Plaintiff